In re COE-TRUMAN TECHNOLOGIES,
INC., Debtor.

COE-TRUMAN TECHNOLOGIES,
INC., Plaintiff,

v.

UNITED STATES GOVERNMENT,
Defendant.

No. 97 C 5591.
Bankruptcy No. 97 B 5736.
Adversary No. 97 A 923.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 22, 1997.

William A. Roberts, III, J. Eric Andre, Howrey & Simon, Washington, DC, for Plaintiff.

Joel Robert Nathan, United States Attorney's Office, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ANDERSEN, District Judge.

This matter is before the Court on motion of defendant, the United States Government, for withdrawal of the reference of the adversary proceeding pursuant to 28 U.S.C. § 157(d). For the following reasons, defendant's motion is denied in part and granted in part.

## BACKGROUND

Coe-Truman Technologies, Inc. ("CTT") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 25, 1997. On July 1, 1997, CTT filed an adversary action against the United States Government seeking to recover damages arising from defendant's failure to compensate CTT for services performed for various agencies of the United States Government. This adversary proceeding was automatically referred to the bankruptcy court of this district pursuant to 28 U.S.C. § 157(a).

Defendant subsequently filed the instant motion in this Court to withdraw the reference to the bankruptcy court pursuant to 28 U.S.C. § 157(d). Defendant contends that mandatory withdrawal is required because non-title 11 federal law will play a substantial role in the resolution of the adversary proceeding, including the interpretation and application of an open and unresolved issue arising under the Tucker Act, 28 U.S.C. § 1491. Alternatively, defendant argues that "cause" exists to withdraw the reference.

## DISCUSSION

 The Bankruptcy Amendments and Federal Judgeship Act of 1984 ("the Bankruptcy Act") was enacted in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which recognized that Congress had erroneously assigned adjudicative authority of Article III courts to bankruptcy judges. The Bankruptcy Act vests in the district courts original jurisdiction over all cases arising under Title 11 of the Bankruptcy Code, *see* 28 U.S.C. § 1334(b), but also permits the federal courts to refer bankruptcy cases automatically to the bankruptcy judges for the district. 28 U.S.C. § 157(a). The Act provides, however, for the reference to be withdrawn in certain situations. The standard for withdrawal of the reference from a bankruptcy court is outlined in Title

28, United States Code, Section 157(d). The statute provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court], on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

This statute, which the courts have generally interpreted restrictively, contains two distinct provisions: the first sentence allows permissive withdrawal, while the second sentence requires mandatory withdrawal in certain situations. *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 952 (7th Cir.1996). Because withdrawal of a reference is not intended to be an "escape hatch" from bankruptcy court into district court, courts prefer to grant such relief only in a limited class of proceedings. *In re E & S Facilities, Inc.*, 181 B.R. 369 (S.D.Ind.1995), *aff'd*, 96 F.3d 949 (7th Cir.1996); *see also* 130 Cong. Rec. H1849, 1850 (daily ed. March 21, 1984)(remarks of Rep. Kramer and Rep. Kastenmeier). As the moving party, defendant has the burden of proving that the reference should be withdrawn. In re *E & S Facilities, Inc.*, at 372; *In re Clark*, No. 95 C 2773, 1995 WL 495951 at *2 (N.D.Ill. Aug. 17, 1995).

Defendant has premised its motion for withdrawal of the reference on both provisions of § 157(d). As such, we will first consider whether withdrawal of the reference is mandatory under the second sentence of 157(d). Because we believe that mandatory withdrawal is not required, we will then proceed to consider whether discretionary withdrawal is appropriate.

## A. Mandatory Withdrawal

■ Withdrawal of the reference is mandatory if "the resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or ·activities affecting inter-

state commerce." 28 U.S.C. 157(d). Although the statutory language is broad, courts have recognized that a literal application of the statute would have the unintended result of requiring the removal of most bankruptcy matters to the district court, which would, in turn, "eviscerate much of the work of the bankruptcy courts." *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949 (7th Cir.1996), *citing In re Adelphi Institute, Inc.*, 112 B.R. 534, 536 (S.D.N.Y.1990) (*quoting* 1 Collier on Bankruptcy para. 3.01 (15th ed.1987)). As a result, the provision has been read narrowly so that withdrawal of the reference is mandatory only where resolution of the claims will require "substantial and material" interpretation of a non-title 11 statute, or which involve an analysis of "significant open and unresolved issues" regarding non-Title 11 law. *In re Vicars Ins. Agency, Inc.*, 96 F.3d at 954; *In re IQ Telecommunications Inc.*, 70 B.R. 742, 745 (N.D.Ill.1987). Conversely, withdrawal of the reference is not required where resolution of the proceeding involves the mere application of well-settled non-bankruptcy law to a new factual setting. *In re Vicars Ins. Agency, Inc.*, 96 F.3d at 954.

■ Defendant argues that mandatory withdrawal is required in this case because plaintiff's adversary complaint will require the bankruptcy judge to consider issues arising under the Tucker Act, 28 U.S.C. § 1491, and the Federal Acquisition Regulations. Specifically, defendant maintains that CTT's claim will require the bankruptcy court to decide an open and unresolved·issue under the Tucker Act, to wit, whether the Tucker Act's waiver of sovereign immunity operates in the bankruptcy courts. Moreover, defendant claims that the bankruptcy court, when considering the validity of CTT's quasi-contract claim, will be required to consider whether the·government representatives with whom CTT dealt had authority to contract for the United States, and whether the Federal Acquisition Regulations preempt the application of CTT's common law quasi-contract theory.

With the principles for mandatory withdrawal in mind and upon review of the adversary complaint, we conclude that the al-

legations do not call for "substantial and material" interpretation of significant open and unresolved non-title 11 issues. With respect to the Federal Acquisition Regulations, we find that the defendant has failed to satisfy its burden that mandatory withdrawal is required in this case. The defendant has failed to demonstrate that these regulations, which govern contracts between private contractors and the United States, will present the bankruptcy court with novel, complex, or unresolved issues. Indeed, defendant has done just the opposite by arguing that straight-forward application of these regulations will bar plaintiff's claims. At most, the bankruptcy court will only be required to apply these well-settled regulations to a new factual setting.

■ As to the Tucker Act, we find that defendant has failed to satisfy its burden that mandatory withdrawal is required. The bankruptcy court is not wholly without guidance in this area. For instance, courts have addressed the exact question at issue here, namely, whether Congress, in light of the sovereign immunity waiver provisions found in the Bankruptcy Code. 11 U.S.C. § 106(a), intended the Tucker Act's waiver of sovereign immunity to apply in bankruptcy cases. *See Quality Tooling, Inc. v. United States,* 47 F.3d 1569 (Fed.Cir.1995); *In re Tractug Assocs.,* No. 2–83–02479 LK, 1996 WL 230765 (N.D.Cal. April 30, 1996). That this case may trigger issues arising under the Tucker Act that have yet to be decided in this Circuit is not sufficient ground for mandatory withdrawal. *See In re Vicars Ins. Agency, Inc.,* 96 F.3d 949 (7th Cir.1996) (unresolved issues arising under RICO held insufficient to require withdrawal of reference). Moreover, as the resolution of this issue will necessarily involve the effect of § 106(a) on the operation of the Tucker Act, we are satisfied that the bankruptcy court has the necessary expertise and experience to resolve this issue and would not be required to interpret or analyze significant open and unresolved issues regarding non-title 11 law.

However, even assuming, arguendo, that the adversary proceeding requires the bankruptcy court to undertake a substantial and material interpretation of an open and unresolved issue arising under the Tucker Act, we believe that the present situation does not involve "other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d).

Mandatory withdrawal is not required every time the bankruptcy court must consider non-title 11 federal law. As the plain language of the statute suggests, withdrawal is required only when the non-title 11 federal law at issue regulates organizations or activities affecting interstate commerce. The Tucker Act. however, is not such a law. The Tucker Act, which provides for the waiver of sovereign immunity under certain circumstances. is part of title 28 of the United States Code, which deals generally with the organization, jurisdiction, structure, and procedures of the federal judiciary.

■ Admittedly, few reported decisions address the interstate commerce aspect of § 157(d). The reason for this is that, in most cases, the statute at issue in the adversary proceeding actually defines the rights and duties of the parties and is therefore essential to resolution of the case on the merits. In this case, however, the Tucker Act merely addresses the jurisdictional issue of whether suit may be brought against the federal government in the first instance. Indeed, the Tucker Act is a jurisdictional statute and, as such, does not create any substantive right to money damages. *U.S. v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

■ Mandatory withdrawal requires that non-title 11 law have more than a mere de minimis effect on interstate commerce. As the Tucker Act merely defines the threshold jurisdictional issue of whether suit may be brought against the defendant, we do not believe that it constitutes a law of the "United States regulating organizations or activities affecting interstate commerce" as contemplated by 157(d). As one court has noted, to require withdrawal of the reference whenever the bankruptcy court must consider a jurisdictional provision under title 28 would lead to many seemingly anomalous situations. For example, mandatory withdrawal would be required whenever there is a challenge to the court's subject matter

jurisdiction under § 1334. *In re Rimsat,* 196 B.R. 791 (N.D.Ind.1995).

■ Our conclusion that the Tucker Act does not regulate "organizations or activities affecting interstate commerce" within the meaning of 28 U.S.C. § 157(d) is in harmony with other decisions involving federal laws of a jurisdictional nature. *See In re CIS Corp.,* 140 B.R. 351, 353 (S.D.N.Y.1992)(jurisdictional issue of whether plaintiff exhausted administrative remedies provided by the Financial Institutions Reform and Recovery and Enforcement Act (FIRREA) does not mandate withdrawal of the reference); *In re Rimsat, Ltd. v. Russian Space Agency,* 196 B.R. 791 (N.D.Ind.1995) (holding that "the provisions of title 28, in general, and the Foreign Sovereign Immunities Act, in particular, are not laws regulating organizations or activities affecting interstate commerce" as contemplated by 28 U.S.C. § 157(d)).

For these reasons, we conclude that the issues that may be presented by the Tucker Act and the Federal Acquisition Regulations do not require mandatory withdrawal of the reference. We now consider whether permissive withdrawal is appropriate.

**B. Discretionary Withdrawal**

■ The first sentence of 157(d). the so-called permissive withdrawal provision, authorizes the discretionary withdrawal of the reference "for cause shown." Although section 157(d) does not define "cause," case law from this Circuit suggests that the following factors may be considered: judicial economy, promotion of uniformity and efficiency in bankruptcy administration, reduction of forum shopping, delay and costs to the parties, the particular court's familiarity with the case, and whether the adversary proceeding is core or non-core. *In re Sevko, Inc.,* 143 B.R. 114, 117 (N.D.Ill.1992) (citations omitted); *Vista Metals Corp. v. Metal Brokers Internat'l Inc.,* 161 B.R. 454 (E.D.Wis.1993).

■ The most important of these factors is whether the adversary proceeding sought to be withdrawn is core or non-core. *In re Leasing, Inc.,* No. 97 C 3821, 1997 WL 414099 (N.D.Ill. July 17, 1997). "[A] proceeding is core ... if it invokes a substantive right provided by Chapter 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Diamond Mortgage Corp. of Illinois v. Sugar,* 913 F.2d 1233, 1239 (7th Cir.1990), *cert. denied,* 498 U.S. 1089, 111 S.Ct. 968, 112 L.Ed.2d 1054 (1991); *see also Barnett v. Stern,* 909 F.2d 973, 981 (7th Cir.1990). That is not the case here. The contractual rights CTT seeks to protect, which allegedly arise from prepetition conduct, would exist irrespective of the bankruptcy environment. Indeed, breach of contract claims have consistently and traditionally been found to be non-core. *See In re Novak,* 116 B.R. 626, 627 (N.D.Ill.1990)(debtor's breach of contract and tortious interference claims characterized as non-core) *In re Sokol,* 60 B.R. 294, 296 (Bankr.N.D.Ill.1986)(debtor's contract and tort claims characterized as non-core); *In re Nationwide Roofing & Sheet Metal,* 130 B.R. 768, 774–75 (Bankr.S.D.Ohio 1991)(debtor's claims for breach of contract, breach of fiduciary duty, and defamation characterized as non-core). Moreover, plaintiff does not dispute that this is a non-core proceeding within the meaning of 28 U.S.C. § 157(c)(1).

This finding weighs heavily in favor of withdrawing the reference. As a non-core proceeding, the bankruptcy court's decision will be subject to de novo review in this Court. 28 U.S.C. § 157(c)(1). We find, therefore, that it is a more efficient use of judicial resources for this Court to decide this case in the first instance. *See In re FMG, Inc.,* No. 91 C 6018, 1991 WL 230390 (N.D.Ill. Oct. 28, 1991)(non-core nature of proceeding sufficient to support discretionary withdrawal).

Moreover, withdrawing the reference in this case will not promote forum shopping or adversely affect the uniform administration of bankruptcy law because CTT's adversary complaint raises issues governed primarily by non-title 11 law. Finally, withdrawing the reference will not affect the administration of CTT's reorganization plan as there is no evidence that payments to any creditors will be delayed as a result of the adversary proceeding.

### CONCLUSION

For all of the foregoing reasons, defendant's motion to withdraw the reference is denied in part and granted in part.

It is so ordered.